# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DANNY DUNHAM,                         )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )        Case No. 07-1186-JTM-DWB
                                      )
                                      )
COFFEYVILLE RESOURCES, LLC, et.al., )
                                      )
                    Defendants.       )
_____ )

## ORDER

On July 31, 2007, the Court entered a Minute Order shortening the time for Defendants to respond to Plaintiff's Motion for Order Pursuant to Fed. R. Civ. P. 26(c)(2) and (d) to Preserve Physical, Non-Electronic and Electronic Evidence and Permit Immediate Entry and Inspection of Defendants' Property and Facilities in Coffeyville, Kansas.  (Doc. 19.)  On August 3, 2007, Plaintiff filed a Motion for Order to Appoint an Interim Plaintiff's Committee.  (Doc. 55.)  On August 1, 2007, Defendants filed a Motion to Dismiss for Lack of Jurisdiction (Doc. 40), and on August 6, 2007, Defendants filed their response to Plaintiff's motion for a preservation order.

By Order of August 7, 2007, the Court entered an Order shortening the time

for Plaintiff to reply concerning the motion for a preservation order and to

supplement his motion for appointment of an interim Plaintiff's committee.  (Doc.

58.)  Plaintiff has now supplemented his motion for appointment of an interim

Plaintiff's committee (Doc. 60), and has submitted a supplemental memorandum

concerning the preservation motion. (Doc. 61.)  Defendant has filed a

memorandum opposing the motion for appointment of an interim plaintiff's

committee.  (Doc. 64.)  The Court has reviewed the parties' filings and is prepared

to rule.

1.      Subject Matter Jurisdiction.

        The Court asked Plaintiff to address any limit on the Court's authority to

issue a preservation order in light of the pending dispute concerning this Court's

subject matter jurisdiction.  Rather than address this specific question, Plaintiff

simply argued that the court did have subject matter jurisdiction.  That question,

however, is for the District Judge to decide after the parties have completed their

briefing on Defendants' motion to dismiss.  The Court's question here was more

specific: in the face of a dispute concerning subject matter jurisdiction, does this

court have jurisdiction to issue discovery-related orders of the type requested by

Plaintiff.  Plaintiff did not answer or address this question.

        The court has reviewed the two cases cited by Defendants on this issue:

*United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487

U.S. 72, 76 (1988) and *Houston Business Journal, Inc. v. Office of Comptroller*

*of Currency*, 86 F.3d 1208, 1213 (D.C.Cir. 1996).  These cases establish that a

non-party who is served with a subpoena by a federal court can, as a part of any

objection to the subpoena, raise the court's lack of subject matter jurisdiction, and

if the court does lack subject matter jurisdiction, then the subpoena is void.  The

Court in *Catholic Conference* noted that a federal court has jurisdiction to decide

whether it has subject matter jurisdiction and may allow discovery for this purpose,

but that  "[i]t is a recognized and appropriate procedure for a court to limit

discovery proceedings at the outset to determination of jurisdictional matters . . . ."

487 U.S. at 79-80 (citations omitted).  The Supreme Court also concluded that the

subpoena in question in that case was directed to the merits of the case and not to

the issue of subject matter jurisdiction, and therefore if, on remand, the court was

found to lack subject matter jurisdiction, the subpoena would be void.

        In a subsequent case involving the validity of an order granting Rule 11

sanctions, however, the Supreme Court reached a different conclusion.  *Willy v.*

*Coastal Corp*., 503 U.S. 131 (1992).  In *Willy*, the district court concluded that it

had subject matter jurisdiction of the case but dismissed it for failure to state a

claim and also entered an order sanctioning plaintiff under Rule 11 for violations

that did not relate to the jurisdictional dispute.  On appeal, the court of appeals

concluded that the court lacked subject matter jurisdiction, but affirmed the

sanctions order and remanded the case to the district court for a determination of

the amount of damages.  On a second appeal, the court of appeals held that the

district court had the authority to enter the sanctions order even though the court

lacked subject matter jurisdiction.  The Supreme Court affirmed and addressed the

argument that the Rule 11 sanctions must be set aside because the court lacked

subject matter jurisdiction:

> This leaves only petitioner's contention that Rule 11
> sanctions must be aborted because at a time after the
> sanctionable conduct occurred, it was determined by the
> Court of Appeals that the District Court lacked subject-
> matter jurisdiction. A final determination of lack of
> subject-matter jurisdiction of a case in a federal court, of
> course, precludes further adjudication of it. But such a
> determination does not automatically wipe out all
> proceedings had in the district court at a time when the
> district court operated under the misapprehension that it
> had jurisdiction.

503 U.S. at 137.   In addition, the Court proceeded to distinguish its prior holding

in *Catholic Conference*:

> Petitioner places great weight on our decision in *United
> States Catholic Conference v. Abortion Rights
> Mobilization, Inc.,* 487 U.S. 72, 108 S.Ct. 2268, 101
> L.Ed.2d 69 (1988), a case involving a civil contempt
> order entered by the District Court. . . . We further
> concluded that if the District Court was found to be

4

lacking subject-matter jurisdiction, that the contempt order would also fall. Focusing on this second part of our decision, petitioner cites *Catholic Conference* as establishing the proposition that a sanction must fall if imposed when jurisdiction is in fact absent.

*Catholic Conference* does not stand for such a broad assertion. A civil contempt order has much different purposes than a Rule 11 sanction. Civil contempt is designed to force the contemnor to comply with an order of the court, *id.,* at 79, 108 S.Ct., at 2272; Rule 11 is designed to punish a party who has already violated the court's rules. *Cooter & Gell, supra,* 496 U.S., at 396, 110 S.Ct., at 2456. Given that civil contempt is designed to coerce compliance with the court's decree, it is logical that the order itself should fall with a showing that the court was without authority to enter the decree. Accord, *United States v. Mine Workers, supra.*

The interest in having rules of procedure obeyed, by contrast, does not disappear upon a subsequent determination that the court was without subject-matter jurisdiction. Courts do make mistakes; in cases such as *Catholic Conference* it may be possible immediately to seek relief in an appellate tribunal. But where such an immediate appeal is not authorized, there is no constitutional infirmity under Article III in requiring those practicing before the courts to conduct themselves in compliance with the applicable procedural rules in the interim, and to allow the courts to impose Rule 11 sanctions in the event of their failure to do so.

503 U.S. at 138-139.

In ***Olcott v. Delaware Flood Co.***, 76 F.3d 1538 (10th Cir. 1996), the Tenth

Circuit also distinguished ***Catholic Conference*** in affirming a sanction order,

5

initially entered by a magistrate judge and then affirmed by the district court, despite the court's lack of subject matter jurisdiction, relying on **Willy v. Coastal Corp**., 503 U.S. 131 (1992).  In **Olcott**, the sanction order was issued pursuant to Fed. R. Civ. P. 16(f) and 37(b) because defendant had continuously failed and refused to submit a full and meaningful accounting.  The Court concluded that its sanction order was more like the Rule 11 order in **Willy** since it sought to punish past conduct of violating court orders issued at a time when the district court had decided that it had subject matter jurisdiction.

In the present case, Plaintiff wants this court to issue a discovery order which is clearly directed to the merits of the case rather than to the issue of whether the court has subject matter jurisdiction.  Furthermore, Plaintiff wants the court to enter the discovery order <u>before</u> it the District Judge has assessed whether the challenge to subject matter jurisdiction is valid or not.  Faced with a question of subject matter jurisdiction, the court would normally limit any discovery to facts that are relevant to the jurisdictional issue.  As to a discovery motion that goes to the merits of the case, the court would normally either deny the motion without prejudice to renew the motion after a ruling on the jurisdictional motion, or would stay any action until the District Judge had ruled on the jurisdictional motion.  In this case, however, there is definite possibility that the clean-up efforts of Defendants, laudable as they

are, might result in the loss of relevant evidence in this case.  Under these

circumstances, the court views the decisions in **Willy** and **Olcott** to support a finding

that the court has a sufficient jurisdictional basis to enter an immediate discovery

order and will grant, in part, Plaintiff's motion, but will STAY its order until the

close of business on August 22, 2007, in order to allow Defendants to seek review

of this Order by the District Judge if they wish to do so.

2.      Terms of the Order for Testing.

Plaintiff's only basis for emergency action on its motion for preservation

relates to sampling of the soil and water before the premises are cleaned up.

Therefore, the Court will deny, without prejudice to renewal after the court rules on

the jurisdictional motion, any request for any preservation order relating to

electronic evidence.  Plaintiff has not established that such an order is necessary or

required at this time.  *See e.g.,* ***United States ex. rel. Smith v. The Boeing Co.,*** 2005

WL 2105972 at * 1-2 (D. Kan. Aug. 31, 2005).

As to sampling of the soil and water located on Defendants' premises, the

Court views the motion as one made pursuant to Fed. R. Civ. P. 34 which requests

entry on designated land or other property in the possession of Defendants for the

purpose of inspection, testing and sampling the property.  Plaintiff's Supplemental

Memorandum describes the protocols proposed by Plaintiff for such an inspection.

7

As to the property from which tests and samples are to be taken, Plaintiff identifies both the "refinery" and also the "fertilizer facility."  However, the specific areas which Plaintiff desires to test or sample all appear to relate only to the "refinery" property and not to the "fertilizer facility."  *See* Doc. 61 at 14 ("Plaintiff desires to inspect, sample and test any and all Crude Oil Storage Tanks that floated and/or released materials on or about July 1, 2007.  In addition we wish to inspect, sample and test the areas surrounding these tanks including, but not limited to, the containment dikes, the concrete ring-walls, tank shell, tank roof, roof drains, transmission pipes, as well as any other piping systems and/or control buildings, pumps, and/or equipment involved in these releases.")

The court will allow inspection, testing and sampling, but <u>only</u> in the "refinery" area and not in the "fertilizer facility."  The areas of the refinery which may be inspected and tested and from which samples may be taken are as follows:

> Any and all Crude Oil Storage Tanks that floated and/or released materials on or about July 1, 2007, and the areas surrounding these tanks including, but not limited to, the containment dikes, the concrete ring-walls, tank shell, tank roof, roof drains, transmission pipes, as well as any other piping systems and/or control buildings, pumps, and/or equipment involved in these releases.

The Court will limit the inspection to a single eight-hour day, and will limit the

number of persons who are allowed to enter and test/sample the property to two attorneys and six experts. The entry onto the property will occur during normal business hours and shall be conducted so as not to interfere with normal refinery operations. The entry, inspection, testing and sampling shall be completed not later than **August 29, 2007.**   The parties are hereby directed to meet and confer as to the timing of the entry and methods of sampling, the specific areas which are described in this Order, and the protocols for testing that will be used. Defendants will be entitled to have their own attorneys and experts present during Plaintiff's entry, sampling and testing, and may also notify the EPA about this Order and allow a representative of the EPA to attend during the procedure. Plaintiff will be required to split all samples taken into at least three sets: one for Plaintiff, one for Defendants, and one to be retained and preserved intact for future use, if necessary.[1]

3.     Appointment of an Interim Plaintiff's Committee.

        While the court acknowledges that it can appoint such a committee, it sees no compelling reason to do so immediately. This is particularly true in this case where the District Judge has not yet had the opportunity to rule on the question of the court's subject matter jurisdiction. There appears to be no reason why counsel of

_____

[1]  The court notes that Plaintiff has committed to return any samples in the event the court is determined not to have subject matter jurisdiction in this case. *See* Doc. 61 at 14 ("Should we lose [the motion to dismiss], we will return the evidence.").

9

record for Plaintiff cannot accomplish the two immediate matters of concern –

responding to Defendants' Motion to Dismiss and completing the sampling and

testing at the refinery – without having a court-appointed committee.

Nor has Plaintiff identified how appointment of the committee will serve to

minimize costs in this early stage of the case.  On the contrary, it appears that the

attorneys identified as potential members of the committee are not attempting to

divide up responsibilities since the motion for testing indicates that all six attorneys

want to be present during the testing and sampling.   If the counsel of record for

Plaintiff in this case cannot informally work out their respective participation in

these two initial matters, it does not bode well for their continued cooperation

throughout the remainder of this case or for the efficient handling of this case.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Order Pursuant to

Fed. R. Civ. P. 26(c)(2) and (d) to Preserve Physical, Non-Electronic and Electronic

Evidence and Permit Immediate Entry and Inspection of Defendants' Property and

Facilities in Coffeyville, Kansas (Doc. 19), is GRANTED IN PART and DENIED

IN PART as stated in this Order.

IT IS FURTHER ORDERED THAT Plaintiff's Motion for Order to Appoint

an Interim Plaintiff's Committee (Doc. 55), is DENIED without prejudice to

renewal after the Court has ruled on the pending jurisdictional motion.

10

Dated at Wichita, Kansas this 20th day of August, 2007.


    s/ DONALD W. BOSTWICK    
Donald W. Bostwick
U.S. Magistrate Judge